UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JUAN RAMIREZ, JR., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:11-CV-408 |
| | § | |
| ERNEST H GUTERREZ, JR, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION
## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this prisoner civil rights action, plaintiff Juan Ramirez, Jr. claims that dentist Dr. Richard Turner and his dental assistant, Darnwell Montooth, were deliberately indifferent to his serious medical needs when they erroneously "worked on" a healthy tooth, and delayed removal of two "decaying" teeth for 134 days, causing him unnecessary pain and suffering. (D.E. 29). Defendants have filed a motion for summary judgment to dismiss plaintiff's claims for failure to exhaust his administrative remedies, and alternatively, on the grounds that plaintiff has failed to state a cognizable constitutional violation and, even if he had, their conduct was reasonable and they are entitled to qualified immunity. (D.E. 66, pp. 5-7, 8-15). Plaintiff has filed a response in opposition. (D.E. 73).

For the reasons stated herein, it is respectfully recommended that the Court grant summary judgment in favor of defendants, and dismiss with prejudice plaintiff's Eighth Amendment claims. In addition, it is respectfully recommended that the Court exercise

jurisdiction over plaintiff's state law claims sounding in tort and/or medical malpractice, and dismiss those claims with prejudice.

## I. Jurisdiction.

The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

## II. Procedural background.

Plaintiff is a federal prisoner currently confined at the United States Penitentiary in Pine Knot, Kentucky, although his complaint involves events that arose while he was an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and confined at the McConnell Unit in Beeville, Texas.

Plaintiff filed his original complaint on December 27, 2011, alleging that, on May 24, 2010, Registered Dental Assistant Ms. Montooth administered a numbing agent to his lower jaw in preparation for drilling and filling two decayed molars located on plaintiff's lower, right jaw; however, Dr. Turner proceeded to drill and fill a cavity located on plaintiff's upper right jaw, causing him pain during the procedure, and additional pain until the bottom teeth were repaired on October 4, 2010. (D.E. 1, p. 3-4).

On March 15, 2012, a <u>Spears</u>[1] hearing was conducted at which plaintiff testified that on May 24, 2010, he reported to the McConnell Unit dental clinic to have a lower right molar *extracted*. (*See* D.E. 20, p. 3). He claimed that, after the Novocain was

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

administered, Dr. Turner proceeded to extract a *healthy* top tooth, despite plaintiff's complaints of severe pain during the procedure. *Id.* Plaintiff claimed also that, after the extraction of the healthy tooth, Dr. Turner realized that he had made a mistake and told plaintiff that he would have to return at a later date for extraction of the bottom teeth. *Id.* Plaintiff alleged that he left the visit in significant pain and that his tooth pain persisted until an October 4, 2010 appointment, at which time the lower tooth was *removed. Id.* Following the hearing, certain claims and defendants were dismissed,[2] but plaintiff's Eighth Amendment claims against Dr. Turner and Ms. Montooth in their individual capacities were retained, and service ordered on these defendants. (*See* D.E. 20).

On June 28, 2012, Ms. Montooth filed her Answer and raised the defense of qualified immunity. (D.E. 24).

On July 20, 2012, plaintiff was granted leave to file an amended complaint for purposes of clarifying and correcting errors in his original complaint. (D.E. 29, 30). In his corrected complaint, plaintiff acknowledges that he was scheduled to have cavities *filled* in two lower molars, not a tooth extracted. (D.E. 29, p. 2). He also admits that the healthy tooth was not extracted, but claims that it was "drilled and filled" without proper numbing medication. *Id.* Finally, he contends that the healthy tooth that was erroneously filled was subsequently removed "due to nerve damage." *Id.*

On February 28, 2013, Dr. Turner filed his Answer and raised the defense of qualified immunity. (D.E. 43).

---

[2] In particular, to the extent plaintiff had sued any defendant in his or her official capacity for money damages, those claims were dismissed as barred by the Eleventh Amendment. (*See* D.E. 20 at 5-6). In addition, plaintiff's claims against the TDCJ Director, the McConnell Unit warden, and John/Jane Doe defendants were dismissed for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §1915(e)(2)(b) and §1915A(b)(1). *Id.* at 8-10.

On March 22, 2013, plaintiff filed a motion for summary judgment (D.E. 47, 48), to which defendants filed a response in opposition. (D.E. 51). On June 19, 2013, the Court denied plaintiff's summary judgment motion noting that plaintiff's affidavit and dental records did not establish either that a healthy tooth was extracted or that any alleged delay in follow-up care was attributable to defendants, such that genuine issues of material fact remained and summary judgment was not warranted. (D.E. 64, p. 4).

On July 23, 2013, defendants filed under seal the instant motion for summary judgment. (D.E. 66, 67). Following an extension of time (D.E. 69), on September 19, 2013, plaintiff filed his response in opposition to defendants' summary judgment motion. (D.E. 73).

**III. Evidence offered.**

In support of their motion for summary judgment, defendants offer:

Ex. A: Plaintiff's dental records dated May 24, 2010 and October 4, 2010 (D.E. 66-2, pp. 1-6);

Ex. B: Affidavit of Dr. Billy Horton, the Dental Director for the University of Texas Medical Branch, Correctional Managed Care ("UTMB-CMC") (D.E. 66-3, pp.1-5);

Ex. C: Affidavit of Drew Stalinsky, UTMB-CMC Practice Manager at the McConnell Unit (D.E. 66-4, pp. 1-3); and

Ex. D: Relevant portions of plaintiff's grievance records for the period of May 2010 through May 2011 (D.E. 66-5, pp. 1-8).

In support of his summary judgment response, (D.E. 73), plaintiff offers:

>    Ex. A:    Step 1 grievance, Grievance No. 2012001787, dated 9/2/11, and related Step 2 appeal dated 9/13/11 (D.E. 73-2, pp. 1-5);[3]
>
>    Ex. B:    Dental record dated January 5, 2010 (D.E. 73-3, pp. 1-6); and
>
>    Ex. C:    Plaintiff's affidavit, dated 9/16/13 (D.E. 74-4, pp. 1-5).

The summary judgment evidence establishes the following:

On January 5, 2010, plaintiff reported to the McConnell Unit dental clinic where he was seen by Dr. John E. Savoy. (*See* D.E. 73-3, pp. 2-3). Plaintiff had submitted a sick call request asking to have his teeth cleaned and also complaining of pain in the lower jaw on both the left and right side. *Id.* p. 2. Upon examination, Dr. Savoy noted that plaintiff's gums were inflamed. *Id.* He noted "slight, generalized" bone loss, and "light" Calculus, Materia Alba, and Staining. *Id.* Plaintiff was missing teeth #17, #18, and #32. *Id.* Tooth defects were noted on two of plaintiff's lower right molars, tooth #30 and tooth #31.[4] Dr. Savoy's proposed treatment plan was gross debridement of plaintiff's teeth, which he characterized as "Priority 2" ("P-2"), and set forth an additional Priority 4 ("P-4") treatment plan as follows:

>    1.   Maintenance of Acceptable PI [Plaque Index];[5]
>
>    2.   Hygiene, PSR [Periodontal Screening & Recording], Fluoride, DDS review of PSR if any scores greater than 1;

---

[3] These grievances are not included in plaintiff's TDCJ grievance records as offered by defendants, (Ex. D, D.E. 66-5, pp. 1-8). Also, please note that in plaintiff's Ex. A, the Step 1 and Step 2 pages are not in order, and therefore, the Step 1 grievance is at D.E. 73-2, pp. 2 and 4, while the Step 2 appeal is D.E. 73-2, pp. 3 and 5.

[4] More specifically, Dr. Savoy noted "30/DO" referring to the occluso distal surface of tooth #30, and "31/MO" referring to the mesioclusal surface of tooth #31. (D.E. 73-3, p. 2).

[5] Per TDCJ policy, offenders must demonstrate that they can keep their teeth and gums healthy before receiving dental care other than emergency or urgent treatment. *See TDCJ Offender Orientation Handbook,* p. 34 (Nov. 2004). http://www.tdcj.state.tx.us/documents/Offender_Orientation_Handbook_English.pdf

   3. Restorations – 30/DO, 31/MO; and

   4. Change to P5 upon completion of Prophylaxis [dental cleaning] if all other care is completed per treatment plan and PSR codes are less than or equal to 1, and the dental CARS [caries associated with restorations or sealants] to zero.

(D.E. 73-3, p. 2). In addition to the proposed treatment plan, plaintiff received oral health counseling ("OHC"), including a demonstration of brushing and flossing, and he was prescribed Fluoride and Chlorhexidine (an antiseptic rinse). (D.E. 73-3, p. 2). X-rays were also taken and reviewed. *Id.* Dr. Savoy's recommended treatment course ("RTC") was summed up as "P4 prophy and restorative 30/31", with a priority level of 4. *Id.*

On May 24, 2010, at 8:22 a.m., plaintiff returned to the McConnell Unit dental clinic for scheduled "restorative treatment" where he was seen by Dr. Turner. (D.E. 66-2, p. 5-6). Upon examination, Dr. Turner noted that plaintiff's oral hygiene ("OH") appeared adequate; however, plaintiff's current x-rays revealed a cavity on tooth #2, plaintiff's upper right second molar, with moderate decay. *Id.* Dr. Turner's assessment was "hard tissue disease," and he added tooth #2 to plaintiff's comprehensive treatment plan. *Id.,* p. 5. Plaintiff was administered two carpules of Lidocaine 2% with Epinephrine. *Id.* Dr. Turner then filled plaintiff's #2 tooth and checked his occlusion. *Id.,* p. 6. No tooth was extracted. *Id.* Dr. Turner's RTC was future repairs of tooth # 30, and tooth #31. *Id.* There is no notation that plaintiff complained of pain during the filling of tooth #2. *Id.*

On October 4, 2010, plaintiff returned to the dental clinic for scheduled "restorative treatment." (D.E. 66-2, pp. 3-4). Dr. Turner noted caries on tooth 30 and

tooth 31. *Id.*, p. 4. Plaintiff was administered 4 capules of Lidocaine 2% with Epinephrine, and amalgam fillings were applied to tooth #30 and tooth #31. *Id.*

On September 2, 2011, plaintiff filed a Step 1 grievance, Grievance No. 20122001787, in which he complained that on May 24, 2010, Dr. Turner had drilled and "filled" an upper molar when he should have filled a bottom molar. (D.E. 73-2, p. 2, 4). He alleged also that Dr. Turner refused to fill the bottom molar at the May 24, 2010 appointment despite plaintiff's complaints of pain. *Id.*, p. 2. Plaintiff stated that he continued to have pain until his lower tooth was repaired at an appointment on October 4, 2010. *Id.* On September 6, 2011, plaintiff's Step 1 grievance was returned unprocessed with the notation "grievable time period has expired." *Id.*, p. 4.

On September 13, 2011, plaintiff filed a Step 2 appeal. (D.E. 73-2, p. 5, 3). Plaintiff states that the Step 2 appeal was returned unprocessed as time barred. (D.E. 73, p. 5). The date of September 20, 2011 is stamped on the first page of the Step 2 appeal (*see* D.E. 73-2, p. 5), but the second page is blank. *Id.* at 3. Plaintiff's TDCJ grievance records do not include a copy of Grievance No. 20122001787, or the related Step 2 appeal, concerning the events of May 24, 2010. (*See* D.E. 66-5, pp. 1-8).

## IV. Summary Judgment Standard.

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. *Id.* Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); *see also Cormier v. Pennzoil Exploration & Prod. Co.*, 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay statements); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S.

at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *Caboni*, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed." *Anderson*, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

V. **Discussion.**

    A. **Exhaustion.**

Defendants move for summary judgment to dismiss plaintiff's claims for failure to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). (*See* D.E. 66, pp. 5-7).

The Prison Litigation Reform Act, 42 U.S.C. § 1997e, provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S. C. § 1997e(a).

The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002). Moreover, a prisoner is

required to exhaust his administrative remedies even if damages are unavailable through the grievance process. *Booth v. Churner*, 532 U.S. 731, 734 (2001); *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001). A prisoner must complete the administrative review process in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). Because exhaustion is an affirmative defense, inmates are not required to plead or demonstrate exhaustion in their complaints. *Jones v. Bock*, 549 U.S. 199, 215 (2006).

The TDCJ provides a two-step procedure for presenting administrative grievances. *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999) (per curiam). The Fifth Circuit requires that both steps be completed in order to file suit in federal court. *Johnson v. Johnson*, 385 F.3d 503, 515-16 (5th Cir. 2004).[6]

In this case, defendants argue that plaintiff failed to submit either a Step 1 or Step 2 grievance notifying prison officials of his claims against Dr. Turner and/or Ms. Montooth, and in support thereof, they offer a copy of plaintiff's TDCJ grievance file. (*See* D.E.66-6, pp. 1-8). Plaintiff's TDCJ grievance file is in fact devoid of any grievance complaining about the May 24, 2010 dental appointment.

In rebuttal, plaintiff offers a copy of the Step 1 grievance he filed on September 2, 2011, Grievance No. 2012001787, that was returned to him unprocessed because the

---

[6] Step 1 requires the inmate to present an administrative grievance at his unit within fifteen days from the date of the complained-of incident. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). The inmate should then receive a response from the unit official, and if unsatisfied with the response, the inmate has ten days to appeal by filing a Step 2 grievance, which is handled at the state level. *Id.*

grievable time period had expired. (D.E. 73-2, p. 2, 4). Plaintiff offers also a copy of the related Step 2 appeal; but, except for a stamped date on the first page, there is no indication on the Step 2 grievance itself that it was actually received by prison officials and then returned to plaintiff as time barred. (*See* D.E. 73-2, pp. 3, 5).

Regardless of whether plaintiff filed a Step 2 appeal, and despite the fact that the TDCJ's grievance records fail to include a copy of Grievance No. 2012001787, the uncontested summary judgment evidence establishes that plaintiff's Step 1 grievance was untimely, and that plaintiff failed to exhaust his administrative remedies as to the claims raised herein. Indeed, the basis of plaintiff's grievance, that on May 24, 2010, Dr. Turner filled the wrong tooth, was known to plaintiff at the time of the incident, as he claims that he had "tears of pain" running down his face. (D.E. 73-2, p. 2). Under TDCJ rules, plaintiff was thus required to file his grievance within fifteen days of May 24, 2010, that is, by June 8, 2010. Plaintiff did not file his grievance until September 2, 2011, over a year too late. The Fifth Circuit has upheld dismissal of complaints for failure to exhaust where the inmate fails to file timely a Step 1 grievance and thereby misses the opportunity to pursue relief. *See e.g. Stout v. North-Williams*, 476 Fed. Appx. 763, 765 (5th Cir. 2012); *Johnson v. Kukua,* 342 Fed. Appx. 933, 984 (5th Cir. 2009). *See also Kidd v. Livingston,* 463 Fed. Appx. 311, 313 (5th Cir. 2012) (inmate's conclusory assertions and production of an unprocessed Step 2 form fails to create a genuine dispute as to exhaustion of grievance).

The summary judgment evidence establishes that there is no genuine dispute that plaintiff did not exhaust properly his administrative remedies, and accordingly, the

defendants are entitled to summary judgment in their favor and dismissal of plaintiff's claims with prejudice.[7]

### B. Failure to state a constitutional violation.

Moreover, even if plaintiff had successfully exhausted his administrated remedies, the uncontested facts demonstrate that plaintiff has failed to state a cognizable claim for deliberate indifference to his serious medical needs such that defendants are entitled to summary judgment in their favor.

To state a § 1983 claim for denial of adequate medical treatment, a prisoner must allege the official(s) acted with deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Wilson v. Seiter*, 501 U.S. 294, 303(1991); Varnado *v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). However, "unsuccessful medical treatment and acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with [his] medical treatment, absent exceptional circumstances." *Sama v. Hannigan,* 669 F.3d 585, 590 (5th Cir. 2012).

---

[7] A dismissal for failure to exhaust is generally without prejudice; however, because any new grievance filed by plaintiff would be time-barred under TDCJ's grievance procedure and the failure to exhaust cannot be cured, dismissal with prejudice is appropriate in this case. *See Marsh v. Jones,* 53 F.3d 707, 710 (5th Cir. 1995) (dismissal with prejudice warranted when administrative relief is time barred or otherwise precluded).

The decision of whether to provide additional treatment is a classic example of a matter of medical judgment." *See Domino v. Texas Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001) (internal quotation marks and citation omitted). As discussed below, the summary judgment evidence demonstrates that, viewed in the light most favorable to plaintiff, plaintiff's claims are no more than a disagreement over the specific treatment he received on May 24, 2010, and he fails to state a claim for deliberate indifference.

Plaintiff reported to the May 24, 2010 dental appointment anticipating that he would receive treatment for tooth #30 and tooth #31 as recommended by Dr. Savoy in the January 5, 2010 proposed treatment plan. (*See* D.E. 73-4, Plaintiff's Aff't at ¶ 4). Indeed, Dr. Savoy had not informed him about problems with any other teeth except tooth #30 and tooth #31. *Id.*, Plaintiff's Aff't at ¶ 2. However, plaintiff does not deny that at the May 24, 2010 appointment, his x-rays revealed a cavity on tooth #2. (D.E. 66-2, p. 6). He also admits that a numbing medication was administered. (*See* D.E. 73-4, Plaintiff's Aff't at ¶ 4).

Thus, accepting plaintiff's allegations as true, on May 24, 2010, Dr. Turner filled tooth #2 without advising plaintiff that he was going to fill that cavity rather than repair and restore tooth #30 or tooth #31. In addition, the numbing medication was administered to plaintiff's lower jaw rather than to his upper jaw where tooth #2 is/was located, causing plaintiff pain during the drilling and filling, and after. (D.E. 73-4, Plaintiff's Affidavit at ¶ 6). In addition, because Dr. Turner did not make the repairs/restoration to tooth #30 or tooth #31 at the May 24, 2010 appointment, plaintiff

claims he continued to experience pain in his lower right jaw until the repairs were performed on October 4, 2010. *Id.* Yet despite plaintiff's complaints, he fails to establish that either Dr. Turner or Ms. Montooth were deliberately indifferent to his serious medical needs that day.

In support of their motion for summary judgment, defendants offer the affidavit of Dr. Horton, the Dental Director for UTMB-CMC, who has reviewed plaintiff's dental records and the treatment he received from Dr. Turner. (*See* D.E. 66-3, pp. 2-5). Dr. Horton concludes that "…[b]ased upon my education, training, and experience as a dentist in the correctional settings, I believe that the dental treatment provided to Mr. Ramirez by Dr. Turner was both appropriate and performed within the proper standard of care." (D.E. 66-3, p. 3). Dr. Horton confirms that, during the time period of January 5, 2010 through March 31, 2011, plaintiff had ***no*** teeth extracted, nor was he ever scheduled for any extraction. *Id.* (emphasis added). Pursuant to Dr. Savoy's proposed treatment plan, plaintiff was scheduled for "restorations-30/DO, 31/MO." (D.E. 73-3, p. 2). There is no notation in Dr. Savoy's clinical notes that the proposed restorations were of an urgent nature or emergency, nor did he note that plaintiff was in pain. *Id.* At the May 24, 2010 appointment, Dr. Turner confirmed a cavity on tooth #2 and filled it at that time. (D.E. 66-2, p. 6).

On October 4, 2010, plaintiff returned to the dental clinic and Dr. Turner filled both tooth #30 and tooth #31. (D.E. 66-2, pp. 3-4). Dr. Turner's notes regarding tooth #30 indicate that this tooth had "deep decay" but "no pulp involvement." *Id.*, p. 4. Tooth #31 had "very large deep decay with possible pulp involvement-no apparent exposure but

close." *Id.* Thus, it appears as if plaintiff's lower right molars, tooth #30 and tooth #31, were in worse condition than the upper tooth #2 that was repaired five months earlier.[8] However, Dr. Turner's decision to fill the smaller cavity at the May 24, 2010 appointment and postpone repair of the two larger cavities until October does not demonstrate that Dr. Turner ignored a serious medical need. At most, plaintiff's complaint is a disagreement with the course of treatment provided, and the Fifth Circuit has repeatedly held that a mere disagreement with the course of medical treatment prescribed does not state a claim for deliberate indifference. *See Stewart v. Murphy,* 174 F.3d 530, 535 (5th Cir. 1999); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997); *Spears v. McCotter,* 766 F.2d 179, 181 (5th Cir. 1985); *Young v. Gray,* 560 F.2d 201, 201 (5th Cir. 1977). Indeed, even if a lapse in professional judgment occurred, any such failure amounts to mere negligence or malpractice, and not a constitutional violation. *See Harris v. Hegman,* 198 F.3d153, 159 (5th Cir. 1999) (citing *Mendoza v. Lynaugh,*, 989 F.2d 191, 195 (5th Cir. 1993)). Allegations of unsuccessful medical treatment, acts of negligence, or medical malpractice "do not constitute deliberate indifference." *Golbert,* 463 F.3d at 347.

As to Ms. Montooth, Dr. Horton testifies that, according to plaintiff's medical records, the registered dental assistant that assisted Dr. Turner on May 24, 2010 was Ms. Altamirano, as evidenced by her scanning the dental notes into the record that day. (*See* D.E. 66-3, p. 3, Horton Aff't, and D.E. 66-2, p. 5, identifying Lydia Altamirano as the

---

[8] In his May 24, 2010 notes regarding tooth #2, Dr. Turner described the cavity as "moderate decay." (D.E. 66-2, p. 6).

dental assistant on May 24, 2010). In addition, defendants offer the affidavit of Mr. Drew Stalinsky who testifies: "Based upon my education, training, and experience as a Practice Manager on TDCJ's McConnell Unit, I attest that Ms. Montooth did not assist Dr. Turner with Mr. Ramirez's dental care on May 24, 2010 and October 4, 2010." (D.E. 66-4, p. 2).

In his summary judgment response, plaintiff argues, that even if a different dental assistant scanned in his records on May 24, 2010, that does not conclusively establish that Ms. Montooth did not assist Dr. Turner on that day. (D.E. 73, p. 8). In addition, he points out that Mr. Stalinsky did not begin working at the McConnell Unit until May 22, 2012, and therefore, he has no personal knowledge as to whether or not Ms. Montooth assisted Dr. Turner in May 2010, only that, based on TDCJ practices and procedures, Mr. Stalinsky is confident she did not. Plaintiff's arguments are persuasive, and neither Dr. Turner or Ms. Montooth have offered their own affidavits. However, accepting that Ms. Montooth was the dental assistant on May 24, 2010, plaintiff fails to establish that her actions amounted to deliberate indifference.

Plaintiff claims that Ms. Montooth administered a numbing medication to his lower jaw, thus numbing the area for tooth #30 and tooth #31, the teeth plaintiff anticipated were to be worked on. He claims that Dr. Turner then began drilling and filling tooth #2, and when he complained of pain, Ms. Montooth admonished him to "Shut up, and stop being a baby." (D.E. 73-4, p. 3, Plaintiff's Aff't at ¶ 4). However, plaintiff does not allege, nor does he offer any proof, that Ms. Montooth was aware of the tooth Dr. Turner was actually drilling. Indeed, plaintiff claims that Dr. Turner did not

realize that he had filled the wrong tooth until after the procedure was completed and he consulted plaintiff's records. (*Id.* ¶ 5, "After the procedure described above, Dr. Turner consulted his notes and realized that he had drilled and filled the wrong tooth.") Plaintiff's own testimony negates any suggestion that either Dr. Turner or Ms. Montooth were acting with deliberate indifference as it refutes that either defendant was aware of a serious medical need at the time, and then deliberately ignored the need. To the contrary, Ms. Montooth numbed the area in plaintiff's mouth she believed was to be worked on, and Dr. Turner filled tooth #2, assured that the numbing medication had been administered earlier. Although the incident was unfortunate and undoubtedly uncomfortable, the filling of a tooth with moderate decay without proper numbing is far different than the extraction of a healthy tooth as plaintiff attested to at the evidentiary hearing.

Viewing the facts in the light most favorable to plaintiff, on May 24, 2010, plaintiff had a cavity filled on tooth #2 located on his upper right jaw, while the numbing medication was applied to his lower jaw, and therefore, the procedure was painful. In addition, Dr. Turner elected to fill the tooth with only moderate decay, tooth #2, on May 24, 2010, thus causing plaintiff to have to wait an additional five months before the severely decayed bottom molars, tooth #30 and tooth #31, were filled. While plaintiff may not agree with this course of treatment, the facts do not support a claim of deliberate indifference. Plaintiff does not show that he was refused care nor does he otherwise demonstrate that Dr. Turner or Ms. Montooth intentionally treated him incorrectly with wanton disregard for his serious medical needs. *See Domino,* 239 F.3d at 756. Plaintiff's

allegations concerning the level of care he received are not sufficient to raise a genuine issue of material fact on whether he was treated with deliberate indifference and they do not articulate a violation of the Eighth Amendment. Because plaintiff fails to establish that relief is available under § 1983, defendants are entitled to summary judgment in their favor.

### C. State law medical malpractice claims.

Defendants also move for summary judgment to dismiss plaintiff's state law claims for medical malpractice.

To prevail on a medical malpractice claim under Texas law, the plaintiff must prove four elements: (1) the health care's duty to act according to a certain medical standard; (2) breach of the applicable standard of care; (3) an injury; and (4) a causal connection between the breach of the standard of care and the injury. *Hannah v. United States,* 523 F.3d 597, 601 (5th Cir. 2008). Generally, lay persons lack the knowledge and experience required to assess the applicable standard of care, whether there was a breach of that standard, and whether the breach caused the plaintiff's injuries. *Id.* As a result, the plaintiff in a medical malpractice case ordinarily cannot meet his burden of proof without testimony from a medical expert.[9] *Id.*

This case is no exception. The standard of care for determining which of three cavities to fill in the context of correctional settings, whether the standard was breached,

---

[9] An exception to the general rule that expert testimony is required to prove medical malpractice applies when the failure of the health care provider to meet the standard of care is plainly within the common knowledge of laymen, for example, when a surgeon operates on the wrong part of the patient's body or leaves surgical instruments or sponges inside the body. *Haddock v. Arnspiger*, 793 S.W.2d 948, 950 (Tex. 1990).

and whether the failure to fill the most decayed teeth first actually caused plaintiff's alleged injuries, are not matters within the knowledge or expertise of lay persons. Under Texas law, plaintiff cannot prove those elements without expert testimony. In this case, the deadline to designate experts was set as May 17, 2013.[10] (D.E. 44). Plaintiff has not designated an expert, and Texas law warrants dismissal with prejudice. *See* Tex. Civ. Prac. & Rem. Code § 74.351(b)(2). Because there is no genuine issue of a material fact that plaintiff cannot establish his state law claims against defendants because he has failed to designate an expert, defendants are entitled to summary judgment in their favor.

## VI. Recommendation.

Based on the foregoing, it is respectfully recommended that the Court grant defendants' motion for summary judgment (D.E. 66), and that plaintiff's constitutional and medical malpractice claims against Dr. Turner and Ms. Montooth be dismissed with prejudice.

Respectfully submitted this 8th day of November, 2013.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

---

[10] Defendants point out that, under Texas law, plaintiff was required to serve them with a copy of his expert's report and curriculum vitae within 120 days of filing suit. *See* Tex. Civ. Prac. & Rem. Code § 74.351(a). Plaintiff did not designate an expert within this time period, or thereafter.

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).